May it please the court, counsel. I'm Chris Kerr here on behalf of Ernest Vereen, and I would like to speak first about the jury instruction and then the two of the ACCA predicates, the categorically overbroad child abuse charge and the 2011 Curtis Johnson battery. The innocent transitory possession instruction that was requested requires two things, that a defendant attained the firearm innocently with no illicit purpose, and second, that the defendant took measures to rid himself of the gun as soon as possible in a reasonable method. I'm going to start with just from the text of the statute. It seems to me that courts have already gotten a little bit creative with the text of the statute by inferring a knowing possession element. As I read the statute, it looks like not a strict liability statute, an absolute liability statute. You pick up a paper bag that's supposed to have a gun inside, and you possess it. Yes, Your Honor. The courts have said, well, that's ridiculous, so we're going to infer some sort of knowing possession element. But now you're asking us to go sort of a few steps further and say, even if knowing possession, no liability, no guilt, if there's sort of like a good reason. Where does that – how do we square that with the text of the statute? Well, Your Honor, the Tenth Circuit has ruled exactly as you have suggested, that there is no room for anything else. There's a knowing possession. You know you have a gun. You're guilty. However, there are, including in this circuit, there are common law defenses that have been applied. Right, but the problem here is you didn't defend with a common law defense of necessity. Correct. You didn't say, Judge, that that's an affirmative defense putting the burden on you. You didn't say, I've got a defense here. It's a necessity. He had no choice. You defended on the grounds that you said that this innocent transitory possession defense would properly lie here. But to do that, for that to be proper as a charge and as a matter of law, you would have to say and read into the statute willfulness, not just knowledge. Because willfulness says someone acted with a bad purpose to disobey or disregard the law. It's a specific intent statute. But this statute is very interesting the way it was written. Congress did not choose to put in any specific intent requirement. Let's hold aside knowledge, which we've read in for sound prudential reasons, although it's certainly not found in the text. But how do we read in willfulness and make this a specific intent statute when Congress quite clearly and quite expressly chose not to do that? Because what you're asking us to do is to add an additional element to the statute, willfulness. No, Your Honor. Well, how could innocence possibly lie here if willfulness is not an element? Do you follow the thrust of at least my question? Yes, Your Honor, I do follow your question. And that was addressed in the case in the Tenth Circuit where the Tenth Circuit adopted the standard that Judge Newsom just suggested, that there is no room for the guy who looks in the bag, he's guilty. There was a petition to hear that en banc and there was a dissent that's in the record by Judge McConnell, a very recent dissent discussing a then recent decision by the name of Dixon, where the Supreme Court indicated that the courts are expected to apply common law defenses that do not negate the elements of the offense. Is it a common law defense? Is innocent transitory possession a common law defense? As opposed to justification or necessity? Well, justification, what Judge McConnell included were justification and entrapment. This circuit has, to this statute, approved defenses of entrapment by estoppel, justification. All three of those. Right, so you could have come forward and defended on the grounds of necessity if you had wanted to do so. Our case law allows for that. Yes, Your Honor. But what I'm asking is whether innocent transitory possession would have been a common law defense. Well, in the sense that the D.C. circuit saw it in the year 2000 as a defense that would have been required by the facts of that case. In other words, it was argued in Mason, in the case that this comes from in 2000, that Congress certainly could not have anticipated that when the delivery driver looked inside the bag, he was guilty of, you see, those are two different things. What Judge Marcus is asking you is, Congress can be presumed to legislate against the backdrop of the common law, and so these traditional common law defenses, justification, necessity, those things just kind of work their way in, and we allow it. ITP is a little bit different in the sense that you're not, that it's certainly not a pre-existing common law defense that can be assumed to have just been sort of intended by Congress sub silentio. It's really, as Judge Marcus says, negating the element of willfulness. It runs to an element of the claim. Right, and I agree. There is no element of willfulness in this statute. If you accept that the willfulness is not part of the statute, then how could there be an innocent defense as opposed to he's not guilty because they didn't prove beyond a reasonable doubt each of the elements in the offense, which was possession, that he had honor about his person, a firearm that moved in commerce, and we've said we're adding to that knowledge. But we're not adding willfulness. We've never added willfulness. So if willfulness is not part of it, then I guess the trouble I'm having is I don't know how an innocent transitory possession could negate anything other than the element that's not there with the absence of willfulness. Because that would go to willfulness. Well, Your Honor, I don't believe that's correct because in the case that it's just drunk in this circuit where the court said that this is a strict liability offense, basically. You pick up the gun and you're guilty. No, no, no, no, but it's very interesting. The language may be a little loose in calling it technically strict liability. Call it what you will. Knowledge is a requirement. So if someone unknowingly, if a cop wrongfully put a firearm in someone's bag and then busted him for being a felon in possession of a firearm, his defense is, I didn't know, and that would be a perfectly adequate defense. I think, Your Honor, what I was trying to say is that the court has said on several occasions in this circuit that though the defendant is guilty, it's a matter of fairness. I think Sistrin says that it would not be a fair result to convict the defendant, though he is guilty, though the elements have been met under our concept of fairness and due process, and that's why we are imputing a defense of entrapment or entrapment by estoppel to the 922G statute. I think that's right. I think entrapment is a good defense. I think necessity is a good defense. The absence of knowledge is a basis for challenging what happened here. The only thing I'm suggesting is, and maybe I'm wrong about this, I don't see how the lack of willfulness is a defense when willfulness is notably not an element that the government has to prove. That's the only question really that I'm focusing on. Your Honor, I see my time has expired. That's all right. Let me answer your question. I've got one more question. Yes, Your Honor. I believe that the court's concerns are dealt with in the dissent filed by Judge McConnell in the Tenth Circuit and also addressed also in Mason as to the pedigree of this innocent possession defense. He cites other prior cases from other courts that have adopted this. The Supreme Court of Utah recently has a case where they decided that this applied to a narcotics case, that this isn't something that was invented out of whole cloth by the D.C. Circuit. They saw it in the law. You see, but the problem with citing the narcotics statutes is that those are specific intent statutes. You've got to show willfulness. If they don't show willfulness, they lose. They have to show not only knowledge but willfulness to act with the mens rea to disobey or disregard the law. Even if there were going to be a defense like this, it seems to me it could not possibly be more lenient than the justification defense. Therefore, if there were going to be such an affirmative defense, it seems to me it would have to have the elements we require in justification, namely the possession or continued possession is necessary to avoid imminent danger of death or bodily injury. There would be no legal, reasonable alternatives to the possession or continued possession. You would fail on both of those. There's not enough evidence to warrant an instruction on either one of those. So we could not reach whether or not there may be some case in which this— in fact, I tried to think of whether there is any case that wouldn't also warrant the instruction for justification that might fall under this kind of thing, and I thought of a couple, but they're pretty remote. To answer my basic question, though, you've got the common law justification defense. Certainly, if we're going to invent a new non-common law affirmative defense, it would have to be at least as restrictive as the justification defense, would it not? Well, Your Honor, the court, the district, or the D.C. Circuit addressed this whole line of reasoning in Mason, and they came to the conclusion that that case did not allow a justification defense, but that those circumstances and a very narrow set of circumstances like the one described in Mason required that this defense be applied because it was just too harsh to say that as soon as a convicted felon looks in the bag or looks in his mailbox, he's committed a 10 or, in this case, a 24-year felony, that Congress could not— But that wouldn't be a crime just if I had a mailbox where I had to open it with a key, and I open the mailbox, I pull it open, and I look inside, and I see a 357 Magnum there, and I shut it. I'm not guilty, am I? I haven't possessed it, let alone knowingly possessed it. It may be in my mailbox, but I haven't touched it. I haven't possessed it. You are, Your Honor, I would think the government would argue that you are in constructive possession of that firearm. And that, then, I'm guilty. You would probably qualify under the justification defense, wouldn't you? Well, I don't see how—there are four requirements for the justification defense, and I don't believe that that would fit all four of them. That sort of circumstance that Your Honor just described was a scenario that the court in Mason addressed, a similar scenario where that delivery driver had returned to his truck and found the truck broken into and saw a gun sitting on the front seat, called 911, and the police arrived, and he had the gun. That would not fit the justification defense, all four criteria, but it would necessarily, that court found anyway, require a judgment of acquittal by the court. However, if the driver had taken the gun home and the police discovered it the next day, and he gave the same explanation, that would not fit the narrow definition that the D.C. court adduced from studying these other decisions that it relied upon. What role do you allow in all of this? The cases, whatever cases there may be that exist between where justification leaves off and criminal liability, what role do you leave the prosecutor of discretion not to charge ridiculous possession offenses? And I guess I'm showing my cards a bit because your answer might be, well, they charged this one. I don't think this is a ridiculous prosecution, but there might be some ridiculous cases between even the outer edge of justification and criminal liability. Well, your Honor's point has been argued back and forth in the cases that I studied to prepare for this argument, and there are some judges that want to count on prosecutorial discretion to weed out those cases, and there are other judges that take a different view, that it's not – you shouldn't – someone's 24-year prison term should not depend in the end just on prosecutorial discretion. See, I agree with that. Just speaking for myself, I don't think you have to rely on the good faith of the prosecutor. Maybe they've got it, maybe they don't. But the problem that I'm having is that any way you slice it under the facts of this case, whether we characterize it as a justification defense, which you expressly rejected, or an ITP defense, which you sought to impose – and help me as I understood the facts here. Your client testified he had a cell phone on his person at the time that he went to the mailbox. He opened the mailbox. He saw the firearm in the mailbox. He could have closed the mailbox, stood there for fear that maybe some kid might come up, although he needed a key to get in there. But he said there was a possibility that maybe the children in his household could have accessed it. He could have stayed there. He had a cell phone and just dialed 911 and said – asked the cops to come down there and said, there's a firearm in my mailbox. I have not taken it out. I am concerned that there are kids in the area. Will you come and retrieve it? He could have done all of that, which would have invoked the defense of necessity or justification. Sounds to me like pretty good defense here if that's what had happened. But instead, he didn't do that. He didn't call anybody. He goes in by his own account, takes the firearm out of the mailbox, puts it in his back pocket, and by his account, he's going to go into his home. And when asked how come you did it that way, his answer is, well, I don't know who put it there, and maybe there were some risks that some bad guys were out there and I had to get inside with the firearm. That strikes me as hard to reconcile with an innocent transitory possession defense, even if the court had given it, or to reconcile it with, as Judge Anderson was asking, with a necessity defense if you had asked for that. Seems to me that he had time, space, and opportunity to, one, ensure the protection and the safety, and two, stay away from that firearm in a way that would have provided him an obvious defense on knowledge grounds and on necessity grounds. What am I missing? Why would this have been a good defense here? Well, Your Honor, the court's points are addressed precisely in Mason in that situation. And the opening the mailbox was the equivalent of the delivery driver opening the bag. The court and the government there argued that he had a cell phone, that delivery driver had a cell phone, could have called police, he didn't have to take possession of that gun and take it to the Library of Congress and turn it over. And the court there ruled that the defendant's conduct there was within the range of factual scenarios that are described as plausible and debatable for a jury to decide. And the court then went into some scenarios, what would fit, what wouldn't fit, and I mentioned one of them a few minutes ago, that would not fit the very narrow defense. And it's important also to note that the standard in this circuit for obtaining a theory of defense instruction is very liberal and includes a very important point that a defendant is entitled to a theory of defense instruction although the sole testimony in support of the defense is his own. Any foundation, weak, insufficient, inconsistent, or of doubtful credibility. So there's a range of factual scenarios and certainly what Your Honor has suggested would have been one reasonable course to lock the box. But the court in Mason said that it would also, what that driver did, was close enough to within the range of reasonableness that the facts were for a jury to decide. And they may or may not buy it. Got it. Thanks very much and you've reserved your time. I have one question about the 2011 battery. If it's all right with the presiding judge. Absolutely. Yes, is that I ask it first to the government and then he gets to answer it. Absolutely. So we'll come back to that and we'll give you the opportunity to double back to that issue after we inquire with the prosecutor. Thank you. We're talking about the sentencing issues. Is this United States Attorney Todd Grandy appearing on behalf of the United States of America? May it please the court. Your Honors, Your Honors, the threshold inquiry is whether there is legal support for the instruction. And as this court, for much the same reasons that this court has expressed already during the course of this argument, at least five circuits have expressly declined to recognize the defense. And we respectfully submit that's what this court should do here. But because again, the felon in possession statute clearly prohibits knowing not willful possession. So that the notion of innocent possession just simply doesn't fit in the context of a felon in possession offense. So for that reason, we respectfully submit this court should follow the lead of those other circuits. With respect to the facts of the case or the facts arising in connection with the defense, this court's decision in United States v. Harkness, which is cited at page 20 of our brief, it's an unpublished decision which bears directly on the facts here. Because there, this court concluded that the defendant's possession of a cell phone on his person was dispositive. And that the existence of the cell phone and the fact that the defendant did not use that cell phone to attempt to rid himself of the firearm indicated that even if this court were to recognize the defense, it certainly wouldn't be appropriate in that circumstance. And that is exactly what we have here. There was no reason for Mr. Vereen to remove that gun from a locked mailbox and put it in his right pocket. He easily could have closed that locked mailbox and either made a phone call, alerted authorities there while he was standing in front of the mailbox, or he could have, if he had other concerns about security or safety, he could have returned to his apartment and made that phone call. He had no reason to take physical possession of that gun. Do you agree that he's in constructive possession of the weapon in his mailbox? I don't believe so, Your Honor, because it wasn't knowing. I mean, I think that the – Well, I mean, so he opens and sees it and closes. He knows it. I mean, he knows that, I don't know, somehow it's within his ambit. Right. And it's his mailbox, after all. Well, it's a mailbox to which he has access, clearly. Does anyone else have access other than the mailman? Well, the testimony was a little unclear on that point, but it appears that there were at least two keys to the mailbox, and it appears that his girlfriend may have had one of them. No, no, I guess what I'm asking is, was this like a bank of mailboxes? Yes, Your Honor. Right, so instead of the mailman having to go to each individual apartment, downstairs is a group of mailboxes. Yes, Your Honor. Each person has – each owner or occupant has a key. Yes. So this particular mailbox corresponded to his apartment. Yes, Your Honor. As opposed to someone else's apartment. Yes. So the only people who would have had access to that would have been him or anyone else to whom he gave a key. Yes, and, of course, the mailman, who would have access to all of the mailboxes. Wasn't there a palpable risk you could charge him with knowing constructive possession? Your Honor, I think – Because you say he had the weapon, as I remember the instruction on constructive. It's on or about his person, and it's in his mailbox. Well, Your Honor, I think that – I'm not suggesting you would have, but let's just suppose some prosecutor got up one morning and said, I'm going to prosecute this guy for that. Well, Your Honor, in the first place, I can't imagine a prosecutor exercising his or her prosecutorial discretion in that way, but even if some prosecutor did, then, as this Court has pointed out, he would have at his disposal the necessity defense. Would the necessity defense be a good defense here? I think it would have been potentially viable. I mean, you know, he could certainly have argued that he was under imminent threat of risk or harm, and he was concerned about the safety of himself or others that might have been in the vicinity, so I think it certainly would have been a viable defense. Why is that exactly? I'm just – if he's locked the mailbox, and unless the mailman's coming back through, what imminent threat is there to anybody at that point? Well, what Mr. Vereen said during his direct examination is his children occasionally also – well, no, he didn't say occasionally. He said his children also accessed the mailbox, and he was concerned that if they opened the mailbox and observed the gun and took possession of the gun, that violence would ensue. So – Well, he could call them. He – as I understand it, the wife has the other key. Yes, Your Honor. That appears to be the case. Maybe the children get it from him or the wife and sometimes go there, but he could guard the mailbox or call the wife and children. But back to if the justification defense would not work in that particular situation where he opens the box, sees the gun, closes and locks the box back, if the justification defense would not work there, then that might be a hypothetical in which you might need a defense like this, but one which had all of the safeguards and all of the restrictions of the justification defense. In other words, he's guilty because he's got constructive possession, but he's doing everything he legally can do, which would have to be he'd call immediately to the police and so forth. Of all the reasons, this defendant does not qualify and he has to, maybe even if he has to stay there to guard against somebody else getting the gun or make immediate arrangements so his wife or whoever's got the other key does not. If the justification defense would not apply, that might be an example. I had a hard time thinking of an example, but that might be an example where this kind of defense would be in some other case appropriate. Well, Your Honor, the problem with that is getting back to the knowing requirement of the statute. I mean, the statute really allows for no innocent possession, and while the D.C. Circuit— I do acknowledge it's hard to get around the logic of what my brother Marcus says. Yes, Your Honor. Because we don't have to reach that in this case. Yes, Your Honor. And I'd also point out that the D.C. Circuit's decision in the United States versus Mason is a clear outlier. Every other court to have addressed the matter that I'm aware of has either expressly declined to recognize the defense or instead has simply done what this court has done. Would Congress have it—I thought what you were going to say in response to Judge Anderson was that Congress made a decision here. Absolutely, Your Honor. And they chose to make it a crime for a felon to possess a gun, and they wanted to draw it as widely as they could because of the pernicious effect they thought felons in possession of a firearm would spawn. Yes, Your Honor. For that reason, they did it. And so they quite intentionally left out of the statute these kinds of mens rea requirements. It didn't stop the courts, notably including my court, from reading knowledge into the statute, although there's nothing at all in this statute that speaks of knowledge. It just says it shall be unlawful for any person who has been convicted of a felony to possess a firearm that moved in commerce. Simple as that. That's like really, really strict liability. Yes, Your Honor, it is, admittedly. And everything you've just said, Your Honor, tracks what the Ninth Circuit said in United States v. Johnson, which is cited at footnote 5, page 20 of our brief, where the court there noted that Congress certainly knows how to create defenses when it chooses to do so, and here expressly declined to do so. And that really should be the beginning and end of the inquiry. Well, were we wrong to read knowledge in? If we can read knowledge in, why can't we read willfulness in? That's really what I hear Mr. Kerr to be arguing. Well, Your Honor, I believe the- I mean, we read knowledge in. It's certainly not in that statute. Right. Well, it's certainly not in 922G1. However, in 18 U.S.C. 924A2, that provision adopts a knowing men's rare requirement for a 922G offense. So I think it is part of the statutory construct, and this court, of course, no doubt based on that, has consistently held that one of the three elements of a felon in possession offense is that the government must establish that the possession was, in fact, knowing. And here it clearly was. Mr. Green had no reason to take physical possession of that gun. He had a cell phone in his front pocket, and he easily could have attempted to rid himself of that gun really almost immediately, but chose not to do so. I missed. You mentioned what I gather to be some statutory support for reading knowledge into this statute. Tell me that again. Yes, Your Honor. I believe it's 18 U.S.C. section number 924A2, and it adopts a knowing men's rare requirement. It says specifically whoever knowingly violates subsection G of section 922 shall be fined as provided in this title. Yes, Your Honor. Not more than 10 years or both. So there's certainly statutory support. Yes, Your Honor. Although even there you could technically read 924A2 as creating a penalty for knowledge. Right. But then it would leave this without any penalty. I mean, I think the knowingly in A2 could cut either way, frankly. Okay. I mean, you know, it could be that A2 quite conspicuously creates a requirement over and above what exists in G. Right. But if we read it that way, we would have no sentence that we could impose other than the court would have plenary authority to go from zero to life. Right. Which would be the logical reference you'd have to draw from reading it that way. Right? Well, yes, Your Honor. But in terms of the statutory construct, you know, the cases I've surveyed seem to all – I mean, that's where it comes from. So in any event, I don't think – we would urge this court to not adopt the outlier approach the D.C. Circuit adopted in the United States versus Mason and instead adopt the approach by five other circuits who have expressly declined to recognize the defense or frankly even the decisions of this court concluding that it's not necessary to decide that ultimate issue because the facts of this case simply don't warrant it. And again, the most factually opposite case we have here is this court's decision in United States versus Harkness. So my normal practice is to address only the issues that the appellant raises during his principal argument, but I'm gathering this court would like me to address – Yes. And would you – I would like you to address the 2011 – The battery. Battery. Yes, Your Honor. Felony battery. Okay. And I have a couple of questions. I'll go ahead and focus you. Number one, do we have binding precedent that touch or strike is divisible? Do we have binding precedent that bodily harm is divisible from touch or strike? Yes. And third, even if we do have binding precedent, is that vulnerable in light of the Solicitor General's concession and whatever rationale underlies that and the comments in the First Circuit Kennedy case to the effect that we cannot rely on the plea colloquy to the extent that the plea colloquy may mention facts that are in fact superfluous and, i.e., facts with respect to which the defendant would have no real incentive to contest? Okay, Your Honor. In our brief, we relied on this court's now vacated decision in the United States versus Green for the proposition that the Florida simple battery statute is divisible and includes three elements. Notwithstanding the vacature of that decision, however, this court in 2013 decided two cases, both of which continue to hold that the statute is indeed divisible. It includes three elements, and both of those decisions were cited in our October 26th response to one of Mr. Vereen's supplement 28J letters. Those cases are United States versus Diaz Calderon, located at 716 Fed 3rd, 1345, at page 1347. And then secondly, this court's decision in Turner versus Warden, located at 709 Fed 3rd, 1328, 1339 through 40. And those cases, both of those cases were based on the Supreme Court's 2010 decision in Curtis Johnson versus United States, which concluded that Florida's simple battery statute is indeed divisible and includes three separate touches, strikes, and bodily harm prongs. So based on that, yes, Your Honor, the answer to your first question is this court has binding precedent holding that the simple battery statute is indeed divisible and has three prongs. However, as to how the— Touch, strike, and bodily harm. Yes, Your Honor. Yes, Your Honor. Now, with respect to the impact of the Solicitor General's recent concession in Franklin v. United States, there, the Solicitor General took the position that the battery statute has two elements, that touches and strikes is not further divisible. By the battery statute, we're talking specifically about 784.03? Yes, exactly, Your Honor, exactly. And the Solicitor General took the position that the touches or strikes prong of Florida's simple battery statute is not further divisible. However, that would run afoul with this court's controlling precedent, and I think the way to harmonize the Solicitor General's— And when you say our controlling precedent, you mean the precedent you just cited? Yes, Your Honor. Absolutely, Your Honor. And also, frankly, that precedent relied on the Supreme Court's 2010 decision in Curtis Johnson v. United States. So the—based on—the way to harmonize— So you're telling us we ought to ignore what the Solicitor General said and apply our own law? No, Your Honor. I'm saying— I'm not trying to put you in a tough spot. No, no, no, Your Honor. I'm not suggesting that at all. I mean—but certainly, while we are no longer asserting that the touches or strikes prong is divisible based on the Solicitor General's position, we certainly have to acknowledge this court's controlling precedent from 2013. But there is a way— Just so I'm clear, as you're standing—and I took this to be the position of your supplemental letters, one of— Yes, Your Honor. That was quite the onslaught. Yes, Your Honor. Not just from you. From both. There was equal opportunity. But— Our short response is, Your Honor. So—but your position as you're standing here today is, in answer to Judge Marcus, you may have binding authority. Yes, Your Honor. But the position of the United States is that touches and strikes are not further divisible. Yes, Your Honor. And, of course, the Solicitor General is not bound by Eleventh Circuit precedent. And so—and, of course—but this court is. I think the way to harmonize the two approaches is to take the approach that this court held in 2018 in its decision in Preston-Johnson v. United States, located at 735 Federal Appendix 1007 at pages 113 through 114. May I have the site again? It's Preston-Johnson v. United States, 735 Federal Appendix 1007, 1013 to 14. And in that case, what this court ultimately did was it recognized that the battery statute is divisible into at least two prongs based on the statute—the two—the two-prong structure of the statute. This court there declined to determine whether the touches or strikes prong is further divisible and instead determined that the—there the defendant had pled—well, had been convicted of an offense that was both a striking offense and a bodily harm offense. And that's what we submit we have here. In this case, the plea colloquy for—the plea colloquy for Mr. Vereen's 2011 conviction or offense, battery offense, establishes that for a period—he falsely imprisoned a woman for 9 to 10 hours and during—I see I'm way over time, Your Honor. You take your time. Okay. That plea colloquy establishes that Mr. Vereen falsely imprisoned a woman for a period of 9 to 10 hours and during that time period repeatedly hit and struck her face and arm causing injuries. That plea colloquy we submit establishes that Mr. Vereen was indeed convicted of both the striking prong of civil—of civil battery and—as well as the bodily harm prong of the statute. And that, Your Honor, is a—that approach would enable this court to be— Absolutely, Your Honor. That's where the divisibility is found. That brings you to Kennedy, First Circuit, the language I just read. Yes, Your Honor. And applying that language to this plea colloquy, hitting and striking the face and arm resulting in injuries is entirely consistent with strike just as much as with bodily harm. And according to the First Circuit's reading of the Supreme Court cases, we—there's no incentive to contest that bodily harm comment. And therefore, we shouldn't rely on that. Well, in the first—in Kennedy, the issue was whether the Massachusetts offense of assault and battery with a dangerous weapon was a violent felony. That offense can be committed intentionally or recklessly. And the Shepard documents in that case did not clearly indicate one way or the other whether the defendant had been convicted of the intentional version of the offense or the reckless version of the offense. And there, the court actually assumed a visibility. But what the court also noted at page 22 of the decision is that we may draw inferences from facts in a plea colloquy, but not for questions of mens rea. And there, the issue was mens rea, whether the defendant in that case had committed his offense intentionally or recklessly. Here, there is absolutely no ambiguity. Mr. Vereen hit and struck his victim and thereby caused injuries. I noticed that. But the rationale—there was some rationale focused on intent. Yes. That case said that that was a little bit different. But the rationale that seemed more prominent was that there was no incentive to contest that additional fact that pushed it in that direction. And that rationale applies with full force in our case, doesn't it? I don't think so, Your Honor, because here our factual pattern is far simpler. Notions of mens rea can often be very complex, and trying to divine intent from a plea colloquy or even a charging instrument can be very challenging. Here, we have repeated strikes that resulted in injury. There is no ambiguity as to what Mr. Vereen was convicted of doing and what he was convicted of doing qualified as both a striking offense and a bodily harm offense under Florida's simple battery statute. So I think the first service decision in Kennedy is distinguishable because it— But there was no incentive in that particular case without looking about the collateral effects down the line. There was no incentive to challenge the bodily harm feature, which was that the police observed injuries when they came. Well, Your Honors, since it's part and parcel of what transpired and provided the factual basis for his guilty plea, I can't— I mean, this is not just a superfluous fact. It's the end result of an encounter that apparently lasted 10 to—9 to 10 hours and resulted in repeated strikes to a victim on her face and arm causing injuries. So I think it's factually different. I think the problem—what the Kennedy court was wrestling with is the inherently difficult notion of trying to divine something as ephemeral as intent from a plea colloquy or a charging instrument. It's far more difficult. Here, what we have is far simpler. Do we have any cases that suggest rationale similar to Kennedy, number one? And number two, what do you think about what's your response to the Supreme Court cases that Kennedy relied upon in reaching that conclusion? Well, Your Honor, I'm not aware of any authority out of our court addressing an issue of this. I mean, our court routinely relies on Shepard-approved documents and information, undisputed information from PSIs to determine whether— to apply the modified categorical approach to determine whether an offense is a violent felony under the ACCA or a crime of violence under the guidelines. So this— I have never seen this distinction made. I have not, Your Honor. I have not, Your Honor. I take it if Kennedy was read to say that you can never rely on a plea colloquy, whether it went to the issue of mens rea or to the operative actus rea, what actually happened, that's what would be wrong, would be what you're saying. Well, yes, Your Honor. And we ought not to adopt that. Well, in fact, Kennedy didn't actually adopt that standard. I understand. But if it had— Yes, Your Honor, I think that would be wrong. I take it you'd say that would be an incorrect reading of how we look at Shepard documents, including those particularly plea colloquies. Absolutely, Your Honor. It would effectively gut looking at plea colloquies for anything. Absolutely. Absolutely. And the Supreme Court has told us quite expressly that among the things we may look at are the plea colloquies. Yes. Is that not correct? That is absolutely true, Your Honor. So what you're suggesting is you have to read Kennedy in context of what they were struggling with, which was a mens rea problem of intentional versus reckless assault. That is exactly my understanding of the decision, Your Honor. Do you have any case from our court where we have relied upon a plea colloquy? Yes, Your Honor. Upon a fact that may not have been any incentive to challenge? Well, Your Honor, I think one of the two decisions I relied on involved a plea colloquy. It was a United States versus Diaz-Calderon decision. And they are really sort of much like our case. The charging instrument had charged touching, striking, and bodily harm in the alternative. The plea colloquy reflected that the victim, the defendant had a physical altercation with his victim, resulting in a, quote, badly bruised stomach. So in that case, that would be sort of factually analogous to what we have here, and that's this court's 2013 decision in the United States versus Diaz-Calderon. And did we hold on the bodily harm or the strike? Interestingly enough, Your Honor, this court relied on the striking prong. And really, it wasn't until this court's decision in Preston-Johnson versus United States in 2018 that this court relied on the bodily harm prong. This court did the same thing in Turner versus Warden there. The victim had been pushed against a wall by the defendant, injuring her hand, and this court characterized it as a striking offense. But I think it clearly could have been a bodily harm case. And that's precisely what this court, that was the analysis that this court applied in Preston-Johnson, said that regardless of whether he was convicted of a striking offense, the defendant was also convicted of a bodily harm offense. And I think that is precisely what we have here, Your Honors. Well, Your Honor, I see I'm well beyond my time, so unless there are any other questions. I have one other on this. I take it the Florida courts themselves have had occasion to interpret 780-403-1A and have treated the two subsections as alternate elements of the crime of battery? Yes, Your Honor. And the Florida jury instructions has also treated it in the same way? Yes, Your Honor. And that's part of the analysis that underlies the Solicitor General's recent concession in the Franklin decision. So the Florida law supports divisibility with respect to bodily harm? Absolutely. More solidly than touch v. strike? Yes, Your Honor. And is the Florida law inconsistent with our law about touch v. strike? Well, our law versus touch v. strike derives from the Supreme Court's 2010 decision in Curtis Johnson v. United States, which relied on a 2007 Florida Supreme Court case called State v. Hearns. About eight months after the Curtis Johnson decision was issued, the Florida Supreme Court issued its Jane—let me see. Approximately eight months after the Curtis Johnson opinion issued, the Florida Supreme Court issued a decision in James v. State of Florida, located at 51 Southern 3rd, 445, 449, in which the Florida Supreme Court explained that Florida battery may be committed in two ways, which, of course, that body of authority is a part of the authority on which the Solicitor General relied to support his concession, and he also relied upon the corresponding jury instruction for the offense. But the construct in Curtis Johnson, of course, remains in play, and this court's authority relying on Johnson certainly remains controlling. So I think that the way to harmonize this body of law is to determine that Mr. Vereen pleaded guilty to both a striking simple battery and a bodily harm simple battery. Thank you. Thank you very much. Thank you, Your Honors. Your Honors, this court recently, the full court in Ovalis, spent a number of pages distinguishing 924C from ACCA in terms of the constitutional and practical problems of looking at prior convictions and trying to come up with a defensible position on the statute. The question that my colleague here was asked by Judge Anderson in terms of did it matter to Vereen, it didn't. A simple misdemeanor battery would have been sufficient to establish the Curtis Johnson battery that he was convicted of in 2011. So it didn't matter what the prosecutor said about those facts. The problem is that since in the last several years what the Kennedy court in the First Circuit tried to address was the change in the law and the more strict application of the ability to look at Shepard documents expressed in Mathis that indicated that the sole job of the sentencing court is to look back at the plea colloquy to determine if the court can clearly ascertain which form of the offense, if it's divisible. Right, but can we ignore the procedural posture in which that case arose? That is to say the court was struggling there with a very different statute arising out of the Massachusetts Penal Code. They're talking about whether the assault or battery was committed intentionally or recklessly. That was the essential problem, was it not? Yes. That they were facing in that case, whereas in this case when you look at 784.03, there's no question that it has to be committed intentionally. We don't have that issue here. We don't have it factually and we don't have it in terms of the actual language of the Penal Code in Florida as opposed to the Massachusetts Code. Yes. Isn't that distinction very important here? Not entirely, Your Honor. I don't believe that the- Well, their holding arises in the context of a statute which is profoundly different. That's the point that I'm trying to get at. Yes, Your Honor. They're struggling with a different statute that raised a different problem. We're not struggling with mens rea. Whatever else we are struggling with, that's not our problem here, right? Yes, Your Honor. That's correct. I agree. However, the principle of applying Mathis' teaching about how to handle prior convictions that are divisible is the same. That principle is the same, that if the prior proceeding in the plea colloquy clearly establishes- So, for example, if Vereen had agreed to those facts and the state judge had said, which he did not, I clearly find that you committed a- that you intentionally caused bodily harm to this victim and are therefore guilty of 784.03 blah, blah, blah, Curtis Johnson Battery. Then I think that would be a different case. However, it is unclear- the greatest evidence that it is very unclear as to which part of the battery statute is implicated is the government has argued from the sentencing through all the pleading until the Solicitor General's memorandum that this was a touch-or-strike battery consistently. What are we to make of what we said, albeit in an unpublished, non-presidential opinion in Preston Johnson? Well, Your Honor, I think- The battery statute was divisible, made that point abundantly clear, and didn't fool with whether 1A1 in turn was divisible. That is to say, actually and intentionally touches versus actually and intentionally strikes. We didn't fuss with that because we didn't have to. Your Honor, I think that case is very distinguishable. Do you think it's wrong or it's distinguishable? I think it's distinguishable, and I'm not sure if it's still correct under the changing Supreme Court standard. However, assuming that it's correct- What would have changed in 2018? We decided that case in 2018. Nothing has changed in 2018, I agree. Okay, so then you have to say not that the law changed after Preston Johnson, but the panel got it wrong. Not necessarily- They may have. It wouldn't be bound by them if they got it wrong, but I'm just asking you whether they got it wrong. That was a 2255, if I recall the case correctly, and the standard was, is it more likely than not that this defendant was sentenced under the residual clause that no longer is in effect? And the petitioner could not prove that by the facts, and additionally, that petitioner had not objected to any of the- Right, but whether it was a 2255 or a direct appeal, the fact remains that the court had to address divisibility, and did address divisibility, and squarely held that 1A1 and 1A2 were divisible. Isn't that right?  I haven't misread that opinion, have I? No, Your Honor. It was, but I believe it's distinguishable because of the stature that the case was in- You mean the procedural posture was critical? Yes, Your Honor. A plain error standard that was used to judge that petition. Does the Mathis case or any other Supreme Court case invoke this superfluous fact, no incentive to challenge with respect to a plea colloquy? I think Mathis relies on that, and I believe that Mathis cites a prior ACCA decision to support that statement, that defendant, particularly in plea colloquies, Mathis says, the majority of Mathis says, that there's a danger that defendants will just agree because they have a deal and the facts don't matter, and they may even be precluded by their counsel, I've done it, or the court from challenging facts that don't matter to the agreed-upon disposition of the case. I realize my time is up, and I'm requesting that I be able to respond to the point about Harkness. You can do it very briefly, counsel. That case is distinguishable. There's a lot more to the facts of that case than just the defendant having a cell phone that indicated to the court that it didn't fit the outer boundaries of any innocent transitory possession defense. Thank you very much, and I notice, counsel, that you were court-appointed, and we very much appreciate you taking on the burden of vigorously representing Europe.